IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA L. ABBOTT | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 05-4497 |
| | : | |
| WASHINGTON MUTUAL FINANCE, INC. | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                           **March 20, 2008**

Barbara Abbott asks this Court for a judgment against Washington Mutual Finance Inc. on grounds the lender's predecessor failed to disclose mortgage finance charges in violation of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*[1] Washington Mutual contends the $1596.40 at issue is a yield spread premium, excluded from TILA's itemized disclosure. After considering all the evidence from this two day bench trial, I conclude TILA does not cover the $1596.40 yield spread premium and find in favor of the defense. I will also deny Abbott's motion to file a n amended complaint.

**FINDINGS OF FACTS**

On February 18, 2003, Plaintiff Barbara L. Abbott borrowed $130,000 from Loan City to refinance her previous mortgage of $118,891.64 on her 104 Mustang Alley, Madisonburg, PA property. Trial Ex. 11 (Abbott's HUD 1 Settlement Statement). Abbott agreed to refinance with Loan City three times in three years after receiving a telephone call from one of its agents. For the last refinancing, Loan City locked Abbott in on January 28, 2003 for a 6% APR on a 30-year,

---

[1] Abbott withdrew her Real Estate Settlement Practices Act claim against Washington Mutual before trial. RESPA 12 U.S.C. § 2605 *et seq*.

$130,000 loan.  On that day, Loan City was offering interest rates between 5.625% and 6.375%. Trial Ex. 4.  During January and February 2003, Loan City was offering interest rates as low as 5%. *Id.*  Neither Abbott nor Washington Mutual presented any evidence that Abbott would have qualified for any other interest rate lower than 6%.

At settlement, Abbott signed a Truth-in-Lending Act disclosure statement, a HUD 1 settlement statement, and a notice of right to cancel the loan. Trial Ex.'s 8, 11, and 12.  The notice of right to cancel gave her until February 21, 2003 to cancel the loan.  Ex. 12.  Abbott testified she did not know the meaning of the box labeled "Brokers Compensation $1,596.40 " listed on line 810 of her HUD 1 Settlement Statement.  Despite her confusion, Abbott failed to ask any questions, signed all the documents, and then received more than  $6,000 in cash from the loan proceeds.  On March 19, 2003, Loan City transferred Abbott's Loan to Washington Mutual.  Trial Ex. 14 (Letter to Abbott about loan transfer to Washington Mutual).

Abbott, unfortunately, began to miss her mortgage payments because of job loss, illness, and family needs.  The Mortgage Electronic Registration Systems (MERS) began a mortgage foreclosure action against her in the Court of Common Pleas of Centre County, Pennsylvania.  Abbott then demanded rescission under TILA for failing to disclose the $1,596.40 paid to her mortgage broker, Priority Mortgage Group; $605 paid to Loan City, and $291 paid to Fidelity as "finance charges." When that demand did not succeed, Abbott filed suit against Loan City, Washington Mutual, MERS, and Priority Mortgage Group.  On October 19, 2005, Abbott amended her complaint to allege TILA and RESPA violations against Loan City, Washington Mutual and MERS, and Unfair Trade Practices and Consumer Protection Law against Priority.

On September 28, 2006, Judge Gardner dismissed MERS as a defendant, the RESPA claim

against Loan City, and limited Abbott's TILA remedy against Washington Mutual to rescission. In March of 2007, Abbott again sought permission to amend her Complaint. This Court denied Abbott's Motion for Leave to File a Second Amended Complaint for failing to comply with an Order of the Court, failing to comply with local rules, and failing to persuade the Court justice required amendment. This Court then denied Abbott's two Motions for Reconsideration.

On the eve of trial, I allowed Abbott to replace her proposed expert with Marie McDonnell and took under advisement Washington Mutual's motion in limine to exclude McDonnell's testimony. At the close of trial, Abbott renwed her request to amend her Complaint.

**CONCLUSIONS OF LAW**

TILA's purpose is to inform the consumer of the true cost of credit. TILA and its implementing Regulation Z require lenders to disclose to consumers clearly and conspicuously terms material to their loans. *In re Escher*, 369 B.R. 862, 870 (Bankr. E.D. Pa. 2007) (citing *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir.1980)). To prove her claims under TILA, Abbott must overcome the rebuttable presumption of the delivery of the required disclosures. 15 U.S.C. § 1635(c).

Section 1635 addresses the right of rescission. Under this subsection, creditors must disclose rescission rights to their obligors and inform them the right to rescind is open for three business days following the transaction. If no notice is given, a consumer has three years in which to rescind. 15 U.S.C. § 1635(f); see also, 12 C.F.R. § 226.23(a)(3).

A borrower's testimony disclosures were not provided, without more, is insufficient to rebut the presumption disclosure occurred where there is written acknowledgment of receipt. *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1011 (7th Cir. 2004) (finding mere assertion of

non-receipt insufficient to rebut written evidence disclosures were provided); *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054 (8th Cir. 2003) (finding allegations disclosures were not provided insufficient to rebut presumption) as cited in *Strang v. Wells Fargo Bank*, N.A., 2005 WL 1655886, *3 (E.D. Pa. July 13, 2005).

Abbott contends the yield spread premium of $1,596.40 was not properly disclosed as a finance charge. A "yield spread premium" is a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the yield spread (i.e., the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan. *In re Escher*, 369 B.R. at 870-71 (citations omitted). The Federal Reserve Board has ruled fees paid "to a broker as a 'yield spread premium' already included in the finance charge, either as interest or as points, should not be double counted" on the TILA Disclosure Statement. *Stump v. WMC Mortg. Corp.*, 2005 WL 645238, *4 (E.D. Pa. March 16, 2005).[2] The HUD-1 settlement statement shows a yield spread premium/brokers compensation of $1,596.40. Trial Ex. 11 (HUD 1 Settlement Statement).

Abbott argues, and attempted to prove, properly computing her approved minimum interest rate would have resulted in a lower yield and, consequently, a lower yield spread premium. The difference between the two yield spread premiums, Abbott argues, was actually a finance charge, and

---

[2]The Third Circuit and its district courts have excluded yield spread premiums from TILA disclosures. *See, e.g., Stump v. WMC Mortgage Corp.*, 2005 U.S. Dist. LEXIS 4304 *9-13 (E.D. Pa. 2005); *Strang v. Wells Fargo Bank, N.A.,* 2005 WL 1655886, *5  (E.D.Pa. 2005); *Hall v. GMAC Mortg. Corp.,* 2007 WL 4382519, *2 (3d Cir. 2007); *Rivers v. Credit Suisse Boston Financial Corp.,* WL 1038567, *3 -4  (D.N.J. ,2007); *Parker v. Long Beach Mortg. Co.*, 2008 WL 53276, *5 (E. D. Pa. 2008).

not a yield spread premium. Because the lender pays the full amount to the broker and Abbott does not pay the yield spread premium, Abbott's approved minimum interest rate is irrelevant.[3] I find the $1596.40 is a yield spread premium, not requiring TILA disclosures.

The second issue before me is Abbott's motion to amend her complaint under Federal Rule of Civil Procedure 15(b) to include allegations of excessive charges for title insurance and the inappropriate notice of the right to cancel letter. She argues amendment would merely conform the Complaint to the evidence presented. *See Whitaker v. T.J. Snow*, 151 F.3d 661, 663 (7th Cir. 1998). Abbott, however, ignores the law of the case doctrine, "limit[ing] relitigation of an issue once it has been decided." *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (citing *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir.2002)). The doctrine exempts extraordinary circumstances such as: (1) availability of new evidence; (2) announcement of supervening new law; or (3) "the earlier decision was clearly erroneous and would create manifest injustice." *In re City of Phila. Litigation*, 158 F.3d 711, 718 (3d Cir. 1998) (citing *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997)).

After reviewing and considering all the evidence, none of the extraordinary circumstances apply to Abbott's case. The notice of right to cancel letter, the HUD-1 settlement statement, and other loan documents were available to Abbott since the commencement of this lawsuit in August

---

[3] Abbott attempted to prove some of the yield spread premium was a finance charge through the testimony of proposed expert McDonnell. McDonnell has extensive knowledge of finances and mortgages, but her knowledge did not assist me in deciding whether TILA had been violated. *Daubert v. Merril Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-95 (1993). McDonnell's speculation about the confusing nature of real estate settlements does not change the legal conclusion a yield spread premium is not subject to TILA disclosure because it is not a finance charge paid by the borrower. McDonnell's speculation about the interest rate for which Abbott might have qualified could not have proved Abbott paid any part of the yield spread premium, the question at issue in this case.

2005.  New evidence must differ "materially from the evidence of record when the issue was first decided and if it provides less support for that decision."  *Id.* at 720.  No new evidence has been presented to justify the Court allowing amendment.[4]

Abbott also fails to prove Judge Gardner's decision to deny her a second amended complaint was clearly erroneous and would create a manifest injustice.  Abbott's counsel did not abide by the Court's R16 Scheduling Conference Order, local rules, or show how justice would be served.  Judge Gardner, thus, denied the motion.  Abbott's counsel then moved to reconsider, and Judge Gardner denied it because she had "failed to meet the standard to amend a pleading."  Ct Order (July 30, 2007).  Judge Gardner's decision was not clearly erroneous.

Finally, Abbott has not proved the decision to deny her a third chance to amend her complaint was a manifest injustice because the three-year statute of limitations bars her claims.  12 C.F.R § 226.23(a)(3); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 304-05 (3d Cir. 2005).  Abbott's statute of limitations expired February 18, 2006, three years after the consummation of her loan in February 18, 2003.  Abbott moved to amend her complaint more than one full year after the statute expired.

Abbott cannot successfully argue the statute of limitations should be equitably tolled.  *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 504 (3d Cir.1998).  The purpose of equitable tolling is to avoid unfair rigid application of a statute of limitations.  *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.1999).  Equitable tolling applies: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way

---

[4] The recent addition of proposed expert Marie McDonnell would not qualify as new evidence.  She might have brought a new approach to the case, but brought no new evidence previously unavailable to Abbott and her counsel.

has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman* 38 F.3d 1380, 1387 (3d Cir. 1994); *Smith v. City of Phila.*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004).

Abbott has presented no evidence in the three years the case has been pending or during the two-day bench trial Washington Mutual actively misled her. The record also fails to show extraordinary circumstances prevented Abbott from asserting her claims in a timely manner. Abbott initially filed this lawsuit in August of 2005 and amended her Complaint in November of the same year. Abbott could have raised her allegations about title insurance overcharge and inadequate notice of the right to cancel at that time. Because she did not, the statute of limitations now bars Abbott's claims.[5]

An appropriate order follows.

---

[5] Abbott's claim of overcharge for title insurance is based on the Pennsylvania Title Insurance Act, 40 P.S. §910-1 *et seq.* Title insurance in Pennsylvania is pervasively regulated by the Title Insurance Act. The only allowed rates for title insurance are approved by and filed with the Commonwealth's Insurance Commissioner. 40 P.S. § 910-37(a). The approved rates are published in the Manual of the Title Insurance Rating Bureau of Pennsylvania (TIRBOP Manual). 40 P.S. § 910-37(a). If a property owner applies for title insurance within ten years of obtaining a policy issued on the same property, the reissue rate includes a ten percent discount. TIRBOP Manual 5.3, 5.50. The statue does not provide a remedy for borrowers who are charged the wrong rate; thus any cause of action for a violation would be brought as money had and received, unjust enrichment or a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, for which varying statutes of limitation might apply. None is longer than three years.